May it please the Court, the plain language of 8 U.S.C. 1447B demonstrates that the District Courts have exclusive jurisdiction once a naturalization applicant files suit. The District Court erred when it concluded that U.S.C.I.S. shared jurisdiction over Emad Haroun's naturalization application even after he filed the present action pursuant to that statute. All four circuits that have addressed this issue, the 2nd Circuit, the 4th Circuit, the 7th Circuit, and the 9th Circuit, all four of them that have considered this issue have ruled that upon the filing of an action under 8 U.S.C. 1447B that the District Court has exclusive jurisdiction. The government cites District Court cases and a few dissents in support of their proposition. None of the circuits that have addressed this issue have ruled in favor of the government on the issue of exclusive versus concurrent jurisdiction. Under the 8th Circuit's case of harm and industry, statutory interpretation, if congressional intent is clear, that is the end of the matter. Here, the intent was clearly to give exclusive jurisdiction to the federal court. I think it would be helpful to talk a little bit about how naturalization works. A lawful permanent resident files an N-400 with U.S.C.I.S., pays a filing fee, they have a biometrics, their fingerprints and their background check is conducted, then they have an interview. After the interview, one of two things happens. Either an oath ceremony is scheduled on an approved or the case is denied with a written decision as to why the case was denied. The law says in 1447B provides that if 120 days have gone by with no decision, then the applicant can go into federal court and ask the judge to naturalize them or to remand the case back to the U.S.C.I.S. for a determination with instructions. And a quick analysis or reading of 8 U.S.C. 1447B shows that approach. It shows that once the applicant files the suit, the court has jurisdiction over the matter and may either determine the matter or remand the matter with appropriate instructions to determine the matter. That statute is clear and it's unambiguous. Once the lawsuit is filed, jurisdiction goes from U.S.C.I.S. to federal court, to the judge, and the judge can determine it or remand it. And in the Bustamante case, the Second Circuit said it would be illogical for Congress to vest the district court with jurisdiction to determine the matter upon a 1447B filing, but also permit U.S.C.I.S. to have simultaneous authority to decide. And I think it's important to, if you look at it as a process, that there's plenty of time where U.S.C.I.S. has the authority and the sole authority to decide whether or not the person becomes a U.S. citizen. They have it from the time that the person files their action all the way up until 120 days have passed after their interview. So they have the opportunity to do a full background check. They have the full authority to decide the case. And they also have the sole authority to decide the case after remand. So there's just this one window where the federal judge and the federal judge alone has jurisdiction to decide naturalization. And if you look at the language... Or choose not to decide. Pardon me? The federal judge also has the opportunity to choose not to decide, right? Couldn't they just decide, I'm not going to decide this, I'm sending it back. Yes, but that's a very important point, a very important juncture when the judge is deciding that. And that's a very important hierarchy. The Ninth Circuit has recognized that there is a hierarchy, that the case goes from U.S.C.I.S., the jurisdiction can only be at one place at one time, and that they then remand it back. And so, knowing that a federal judge is overlooking what they're doing, and knowing that a federal judge might decide it themselves, is a bit of a hammer to force U.S.C.I.S. to decide the case in a timely fashion. If you go back to 1990, when the changes were made to the Immigration Nationality Act as it related to naturalization, in the old days, immigration would do the investigation and a federal judge would actually decide whether or not the person became a citizen. That was deemed to be too time consuming and there were great delays. So what Congress did is they decided to make it much more of an administrative proceeding to give U.S.C.I.S. the authority to naturalize people, but they wanted to make sure that those delays got cut, that the length of time that people were waiting went down. And so they kept two things in the statute. They kept two roles for the federal judge. Number one is the role under 1447B with the 120-day deadline, and the other was 1421C, which allows if someone has their license, what you have to do is you have to file an N-336, which is an administrative appeal in U.S.C.I.S., and once U.S.C.I.S. decides that, then you can go to federal court for de novo review. So the federal courts are still involved in the naturalization process and it's really important to immigrants like Ahmad Haroun to be able to have that judicial oversight. And if you look at the language, determine in 1447B means to fix conclusively or authoritatively, and remand is to order back, to send back a case to another court or agency for further action. Now in order for jurisdiction over the naturalization matter to be remanded back to U.S.C.I.S., it had to have been taken away from U.S.C.I.S. for a certain period of time, and that's that window that I was talking about from the time the suit was filed until the district court remands. And as I mentioned, Hovsepian recognizes that hierarchy. They said the most natural reading of remand in 1447B is in the same sense as when a circuit court remands a case to the district court. They said we do it because the district court lost jurisdiction upon filing notice of appeal, just like here when I file a 1447B action for my clients in federal court, that takes jurisdiction of the case from U.S.C.I.S. and gives it to the federal judge. The Fourth Circuit said that in looking at the statutory language, given these words, their ordinary meaning, as we must, we can only conclude that a proper 1447B petition vests the district court with exclusive jurisdiction unless and until the court remands the matter to the U.S.C.I.S. Nothing in the statute suggests that Congress intended that an agency could subvert Congress's choice to vest the district court with jurisdiction to, quote, determine the matter, unquote, once an applicant files a timely 1447B action. The government incredibly relies on the district court's decision that Bustamante overruled. The government argues that because exclusive is omitted from the final text of 1447B, that the concurrent jurisdiction was implied. The court said the language of section 1447B shows that Congress intended either U.S.C.I.S. or the district court to decide the applications that remain pending beyond the 128th period at the applicant's choice. The omission of the term exclusive is consistent with this intent, but nothing in the statute suggests that once the applicant makes a choice in By providing district courts with the option to remand with instructions, Congress intended that after an applicant files a proper 1447B petition, U.S.C.I.S. would lack the authority to decide an application absent remand. That's very important. So Bustamante, Atape and Josepian, they all recognize that remand would be meaningless if U.S.C.I.S. always maintained jurisdiction. For in that situation, there would be no need for the district court to send anything back because C.I.S. would have had the matter all along, and that would be nonsense. So we believe that the clear language of 1447B establishes that the federal court and the federal court alone has exclusive jurisdiction over Mr. Haroon's application upon the filing of this action, and all four circuits have gone that way. But if the court wants to look at the legislative history, I think you then go back to the way things were before 1990. And before 1990, it's undisputed that the federal courts had sole authority for naturalizing people. So if they're going to say that there's confusion between collateral and exclusive, which there isn't, but if they say that, then Congress didn't take that power away from the courts because it wasn't clear. If there is ambiguity, it goes in our favor. And it's important, judges. I sue U.S.C.I.S. a lot for immigration delays, and we always do that under the Administrative Procedures Act. So there's general provisions in the APA that say that if an administrative agency is taking too long to decide a case, that you can go into federal court, file a writ of mandamus, and ask the court to compel action. But naturalization is different. Naturalization is special. Naturalization has its own statutory scheme. It's the only kind of case where Congress has specifically said that if 120 days have gone by, you can go into federal court, you can take that jurisdiction from U.S.C.I.S. and have a judge decide it. And they did that because they understood that naturalization is the greatest rank for immigrants. It's the highest achievement that immigrant can get when it comes to immigration. And they did that because they wanted to make sure that the courts maintained authority over the immigration service. Some of the courts cited by the government have expressed, some of the lower courts, the district courts, have expressed concern over the district courts lacking resources to conduct meaningful naturalization hearings. Congress did not share that fear. The district courts decide matters much more complicated than citizenship. The case right before us with 140 page opinion sort of demonstrates that. U.S.C.I.S. conveys all of the background research that they've already done. When we're talking about a lawsuit, U.S.C.I.S. should have been done long ago. The background search, the background check takes much less than that. The interview has already happened. U.S.C.I.S. has already fulfilled its role. The one thing they haven't done is issue a decision. And that's the problem. And that's what 1447B was designed to protect. Well, then the situation here was that they did issue a decision? They issued a decision a few days after we filed suit. That's right, Your Honor. So if you win, you get to make, in essence, get another bite to persuade the district court to grant citizenship. Is that your goal? Yeah, the district court failed to fulfill its duty under 1447B, which was to make an independent determination whether it wanted to maintain jurisdiction and have a hearing or to remand it back with instructions. So one outcome could be the district court deciding to remand without deciding, give instructions and the decisions back with U.S.C.I.S.? That's a possibility in this case and in every case. But we've had cases with this exact same judge where we filed suit and the parties worked all the way up until trial to do discovery and litigate the issue as to whether or not my client got his citizenship. So U.S.C.I.S. is sort of picking and choosing which cases they decide. They're sitting on some cases for years and years, and that's what 1447B is determined to do. That gets to the question, what about the policy argument that I think the dissent made in the Fourth Circuit case about wouldn't what happened in the district court here allow a more robust review of your client's application? I'm sorry, Judge, I don't understand your question. Well, doesn't what the district court did, doesn't it provide an escape hatch for your client? In which way? In other words, you obviously are thinking the district court was wrong, but are there any policy arguments in favor of what the district court judge did in this case? I don't believe so, Judge. I think that if you look at the clear statutory language and if you look at the person who sponsored the legislation, if you look at the legislative history, the author of the bill said that this should be a decision that's made by the applicant, that the applicant should have the ability to at least ask a federal judge. Some judges might remand as a matter of course, but other judges are going to hold USCIS. There's a case that just came out a couple months ago from Minnesota where the court gave USCIS seven days to decide a case. I've had some of these lawsuits where these drag on for three, four, five, seven years. I had one where a lady was waiting nine years for her naturalization. Counsel, it's within the discretion of Congress to determine whether or not to grant jurisdiction to the federal district courts. I'm curious, once they've done so, is there a constitutional problem with them also leaving concurrent jurisdiction in an executive branch agency, which could potentially usurp the role of the judiciary while they have a case pending before them? I think, Judge, I think you're right. I think that a fundamental problem with the approach that USCIS is advocating is that they're trying to strip the federal courts from jurisdiction that they have. Just real quick, my time is running out. Do you wish to reserve any time? I do. I did reserve a little bit of time. You're into it now. Oh, I am? Yes. Oh, thank you, Judge. Okay, I'll reserve. All right. Mr. Platt. Mr. Chief Judge, and may it please the Court, good morning. I'm Stephen Platt for the Appellees, including USCIS. The statute at the heart of this case sets a baseline. Naturalization applications are adjudicated by USCIS and only by USCIS. A very limited exception to that baseline occurs in 8 U.S.C. 1447b. 120 days after the interview, if USCIS has not adjudicated the application, petitioner may go to federal court where the court, quote, has jurisdiction, which with it, with which it, quote, may do something. It may either order a remand with instructions or it may adjudicate the application itself. So when the language says has jurisdiction over the matter, it sounds like at that point Congress is saying the court can decide this. Whether this person is granted citizenship or not is now a matter that's moved from the executive branch to the judiciary. Is that accurate? Your Honor, we would agree that federal courts can exercise jurisdiction and I would agree that jurisdiction moves from the legislative branch to the judiciary, but it doesn't completely go over there because of that baseline. What keeps it from completely going over? Because it seems inefficient to have federal courts and also having the executive and its staff working on a matter and in essence, what if they came up with a decision at the same time? Now you've got the judge deciding one thing and the agency deciding the other and you have conflict between the branches. If jurisdiction is in the authority to decide the matter is with the judiciary, it seems to make sense to have the judiciary make the decision and once that decision is made, that's the end of the matter. They may decide to send it back, but it seems having the authority to remand doesn't seem to make much sense if the other entity has concurrent jurisdiction. You simply just don't decide and let them go ahead and take their time and finish however long it takes them, but to remand seems to not really make much sense where there's a concurrent authority. Yeah, sure. So we think because Congress chose not to use words such as Congress, or sorry, that a court has exclusive jurisdiction to review a delayed naturalization application or they deemed it unnecessary. At one point it was language was in there, but they took it out. They just figured we don't need to say it. That could be true, but we think in light of the words may, the fact that a court may do something about a delayed application such as remand with instructions or to determine the application itself, it didn't say, you know, must either determine the matter or must remand with instructions. As for Judge Smith, your efficiency concerns, we think that that's absolutely something that the courts and the agency can communicate about. So if the court believes that it's really close to deciding the application or that it wants to, it can, for example, as a function of its inherent docket management authority, order the agency to give X number of days notice before the agency would adjudicate the application. Is that how it works in the real world? I know, Your Honor, I think it could work that way. How it's actually working out in the real world is that as our appendix or addendum, I guess, shows most district courts within the Eighth Circuit aren't actually determining the matter themselves. They're choosing to remand to the district court, which is compatible with a theory of concurrent jurisdiction because... What would the parade of horribles be if we decided to follow the other four circuits that have ruled on this case? So, Your Honor, I think that... In other words, it would preclude the district courts from this circuit and every other circuit from doing what, well, from this circuit, from doing what they've been doing. Sure. So, Judge, before I answer that, too, I'll point out that it's, while, yes, there are decisions of four other circuits, it's not a universal view across the judiciary that this is an exclusive jurisdiction statute. There were dissents in the Fourth Circuit and the panel decision in the Fourth and numerous district court judges, including the circuit. But if Your Honors were to rule that this statute does solely vest jurisdiction in the court to adjudicate these applications, we think that it would be an injustice to naturalization applicants. You know, Mr. Hroon, for example, if USCIS's adjudication is deemed valid, which would be under concurrent jurisdiction, that came over two years ago. So, he would have had the answer to which he is statutorily entitled for two years, two years ago. So, he could have begun the process of administrative, seeking, going and getting an administrative counsel. What do you see as the purpose of the statute granting the federal court's jurisdiction after 120 days have passed? The purpose of the statute is to, one, it's an expediting statute. So, how does, how is the purpose, if the purpose is to expedite the process, how is that purpose furthered if the agency has no incentive to decide faster than 120 days because they still have jurisdictions? So, I'll say that once more than 120 days have passed, it is faster for the applicant to have both the court and the agency working on it. Again, that's exactly what happened here, where the agency was able to get an answer on the application more quickly than the court was. As far as an allegation that this incentivizes USCIS to sit on these applications, to not move on them, I think that's a different lawsuit. 1447B doesn't look at the motives of the agency. It doesn't, and I know it doesn't, because that was actually one of Mr. Haroon's other claims, which the district court denied, and the dismissal of which was not appealed by him. And so, the, in addition to the words has and may in the statute, we don't believe that the words determine the matter necessarily mean that it must be an exclusive jurisdiction statute. Judge Graves, you expressed concern about this usurping the court's authority if, say, the agency were able to render an adjudication while a lawsuit is pending. We don't believe that it's USCIS that would be usurping the court's authority. We think that's Article III, Section 2 of the Constitution because that would be taking away the court's authority because there would no longer be a controversy. Essentially, that's the relief that the petitioner is seeking he would have received, and in fact, that is the exact relief that Mr. Haroon sought here. It wasn't, as he suggests, that the district court failed to choose between remanding with instructions and determining the matter. The only relief he requested in his complaint was for the court to remand to USCIS to adjudicate. And as for the words remand with appropriate instructions, although, you know, he says that Mr. Haroon says that that means that there must be a court above the agency and so the court can only send it back down to the agency, but we think that the word remand refers not to taking away any jurisdiction. It means simply returning to that baseline. The baseline in Section 1446A, no, 1446D and 1421A, which say that normally USCIS has the sole and exclusive authority to adjudicate these applications. Moving on to the other purposes of the statute, another important one is... Are there any analogous concepts and relations between the executive and the judiciary where decisions can proceed along dual tracks in both branches with whichever one deciding at first having the being the end of the matter? Yes, Your Honor. So we have an example in our brief about how if, say, under normal Administrative Procedure Act principles, if a rulemaking is challenged, the agency could then go and, say, change the rule and thus moot out the challenge. Now, of course, there may also be concerns about whether that's an injury that's capable of repetition yet evading review, sorts of exceptions which were not raised here by Mr. Haroon. Another example might be, and before I leave that between the agency and the court, I'll say that, as Your Honor's pointed out, Congress does have the ability and authority to define court's jurisdiction, and Article I of the Constitution does expressly say Congress can establish a uniform rule of naturalization. So we believe that the legislature's power to define jurisdiction here is at its zenith, where they have come up with this structure which perhaps it's more unusual, but we think is wholly permissible. And as for court, just in looking at the courts for a system where two courts may be working on a matter at the same time, I suppose that might be analogous to, say, someone petitioning the Court of Appeals for writ of mandamus directing the district court to revise an interlocutory order it is ordered or to otherwise take some other different action. Separate, of course, from a normal appeal where it's normally pencils up for the district court, but under that scenario, it's safe. Mandamus would only deal with a decision to make the lower court decide. It wouldn't decide the merits itself. That's true, Your Honor, but I believe that in an opinion issuing a writ of mandamus, the worded in a way that really limits the district court where it can't take any other action other than to follow the direction of the Court of Appeals. So one other purpose of the 1447B is to reduce the backlog of cases in the federal courts. As of last year, USCIS received about a million naturalization applications. So it's understandable that Congress, given the very high number of naturalization applications, wants to keep as many of them out of the courts as is possible. The general trend in this statute was to remove a lot of the authority out of the courts and to place it in the agency. So to the extent that the plain language that has in the May of 1447B doesn't decide the matter. Did the other four circuits, or the four circuits that have ruled contrary to your position, did they just give short shrift to that argument? Or didn't even consider it? I mean, the Seventh Circuit case is remarkable in its brevity and to the point. The plain language of the statute says what it says. End of case. Yes, Your Honor. So we think, yes, they did give short shrift to that argument. Mr. Hroon himself doesn't even really address the backlog argument. And as for the plain language, the Seventh Circuit and El Jabri disposed of this whole issue in about one paragraph. And they didn't deal at all. In fact, none of these four circuits addressed the has or the may in the language. Perhaps they didn't have you arguing there before them and didn't have the benefit of your and I'm not being facetious about this. Maybe it was not well presented to these courts. That's possible. I know with at least on the may point that that was raised to the Huff panel before it went to the Embank. That's also a panel is what you call what they do there. But we think that, yes, all these arguments were not adequately addressed by those courts. Counsel, the statute does say may, but doesn't it only give two choices for the court? It can either decide it or remand it. What else would it do? Um, well, the court is not able to go forth and go forward and administer the oath of naturalization just yet. You know, the requirements for naturalization have to be satisfied up through the time that the oath of naturalization is taken. So in theory, after a federal court on a 1447B case were to determine the matter itself and grant the something else could go could material could happen where USCIS would have to go and review that to make sure that the requirements are still met before the oath ceremony occurs. So there is that sort of last step to be taken. And something else that I'll point out too about the context of this statute. I think 1421C, the statute in the Immigration Act of 1990 that allows a petitioner who receives a denied naturalization application to go to a federal court and receive de novo review with new fact finding. I think that is an important part of the structure, which shows that the oversight function that Mr. Hroon was just talking about is the courts are supposed to have oversight over this process, but that's not supposed to occur until it doesn't need to occur, excuse me, until later on. 1447B only guarantees that an applicant will receive an adjudication, not necessarily grant, not necessarily a denial. If there is a denial and the applicant continues to be disappointed by that and goes through the administrative appeals process, 8 U.S.C. 1421C is the safety valve to ensure that, you know, if it's an erroneous denial that it is corrected by the courts. I see that I'm about out of time unless there's any further questions. Is that more illusory than real, the safety valve, or does it work out in a lot of cases? Does it grant relief to people like this person? I know that it is used and that, you know, our office has trials under 1421C regularly, and if that's something that if, you know, I haven't seen in these briefs, nor is it really before the court, but the propriety of the denial actually issued, if Mr. Hroon feels that it's a, was, you know, wrong as a matter of law, then that is something that he may still avail himself of. Thank you. Thank you, Mr. Platt. Mr. Hackey. Counsel talks about the safety valve on November 28, 2016, even though we believe that the district court had sold jurisdiction to decide the matter. We filed an administrative appeal with U.S.C.I.S. We filed an N-336, which is a step that you have to take before you get to 1421C. U.S.C.I.S. has, again, sat on that application for two years, even though the law says that they have 180 days to conduct a hearing. They've done nothing on that case. We did exactly what he just proposed in this case, and nothing has happened. Judge Smith, you raised all the issues that we've identified, that the agency is overreaching, that there's an attempt to usurp the court's executive branch, that the statute is clear, and the real-world effects of what happens when the district courts don't enforce 1447B is that good men like Ahmad Haroun do not get their chance to have themselves naturalized, and we would ask the court to reverse. Thank you, counsel. The court thanks both of you for your presence and the argument you've provided to the court, and the briefing you've submitted will render decision in due course. Thank you.